# UNITED STATES BANKRUPTCY COURT
## EASTERN District of TEXAS

In re Gerald Dyer,
       Debtor

In re _____,
       Co-Debtor

Case No. 08-42815
Chapter 7

## REAFFIRMATION AGREEMENT

*[Indicate all documents included in this filing by checking each applicable box.]*

☒ Part A: Disclosures, Instructions, and
Notice to Debtor (Pages 1 – 5)

☒ Part B: Reaffirmation Agreement

☒ Part C: Certification by Debtor's
Attorney

☒ Part D: Debtor's Statement in Support of
Reaffirmation Agreement

☒ Part E: Motion for Court Approval

*[**Note:** Complete Part E only if debtor was not represented by an attorney during the course of negotiating this agreement. **Note also:** If you complete part E, you must prepare and file Form 240B – Order on Reaffirmation Agreement.]*

**Name of Creditor:** CNH Capital America LLC

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1. DISCLOSURE STATEMENT

*Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:*

### SUMMARY OF REAFFIRMATION AGREEMENT
This Summary is made pursuant to the requirements of the Bankruptcy Code.

### AMOUNT REAFFIRMED

The amount of debt you have agreed to reaffirm: $30,807.94 _____

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.*

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: _____%.

*— And/Or —*

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$_____ @ _____%;
$_____ @ _____%;
$_____ @ _____%.

b. If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: _____%.

*— And/Or —*

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: 2.90%. If different simple interest rates apply to different balances included in the amount reaffirmed,

the amount of each balance and the rate applicable to it are:

$_____ @ _____%;
$_____ @ _____%;
$_____ @ _____%.

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| Farm Equipment | $38,900.00 |

*Optional---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of _____ is due on _____(date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

*—Or—*

Your payment schedule will be: 64 (number) payments in the amount of $520.00 each, payable (Monthly) on the 16th (day) of each Month, unless altered later by mutual agreement in writing.

*—Or—*

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

## 2.    INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. <u>If the creditor is not a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. <u>If the creditor is a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

NOTE: When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

## PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

A Retail Installment Contract entered into on May 16, 2007 between Gerald Dyer and FEI Equipment, Ltd for certain equipment listed on the attached Retail Installment Contract which is assigned to CNH Capital America LLC.

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

## SIGNATURE(S):

Borrower:                                         Co-borrower, if also reaffirming these debts:

_Gerold Dyer_
(Print Name)                                      (Print Name)

_____                                   _____
(Signature)                                       (Signature)

Date: _2·3·09_                                     Date: _____

Accepted by creditor:
CNH Capital America LLC,
PO Box 3600
Lancaster, PA 17604-3600

_____
(Signature)

_Aaron Lachell____ High Risk/Bankruptcy Analyst_____
(Print Name and Title of Individual Signing for Creditor)

Date of creditor acceptance: 1/20/09

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[To be filed only if the attorney represented the debtor in negotiating the reaffirmation agreement.]*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: _____

Signature of Debtor's Attorney: _____
MERV WAAGE, ATTORNEY
8350 South Stemmons
Hickory Creek, TX 75065

Date: 2·3·09

**PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT**

*[Read and complete numbered paragraphs 1 and 2, **OR**, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete paragraphs 1 and 2 <u>and</u> your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of the page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship."]*

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $7,556.67, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $7,010.67, leaving $526 ⁼ to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: _____

_____ .

**(Use an additional page if needed for a full explanation.)**

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____          Signed: _____
      (Debtor)                                                    (Joint Debtor, if any)

Date: _2·3·09_____

*— Or—*

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____          Signed: _____
      (Debtor)                                                    (Joint Debtor, if any)

Date: _____

## PART E: MOTION FOR COURT APPROVAL

*[To be completed and filed only if the debtor is not represented by an attorney in negotiating the reaffirmation agreement.]*

### MOTION FOR COURT APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of this reaffirmation agreement, and because (provide any additional relevant reasons the court should consider):

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions (*check all applicable boxes*):

☐ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of negotiation of the reaffirmation agreement)

☐ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income)

Signed:_____
      (Debtor)

_____
      (Joint Debtor, if any)

Date: _____

Form 240B—Order on Reaffirmation Agreement

# United States Bankruptcy Court
## EASTERN District of TEXAS

In re <u>Gerald Dyer</u>,
      Debtor

Case No.<u>08-42815</u>
Chapter 7

In re ___,
      Co-Debtor

## ORDER ON REAFFIRMATION AGREEMENT

The debtor(s) _____ have filed a motion for approval of the
        (Name(s) of debtor(s))
reaffirmation agreement dated _____ made between the debtor(s) and
        (Date of agreement)
<u>CNH Capital America LLC</u> . The court held the hearing required by 11 U.S.C. § 524(d)
  (Name of creditor)
on notice to the debtor(s) and the creditor on _____.
        (Date)

COURT ORDER:    ☐ The court grants the debtor's motion under 11 U.S.C. § 524(c)(6)(A) and approves the reaffirmation agreement described above as not imposing an undue hardship on the debtor(s) or a dependent of the debtor(s) and as being in the best interest of the debtor(s).

☐ The court grants the debtor's motion under 11 U.S.C. § 524(k)(8) and approves the reaffirmation agreement described above.

☐ The court does not disapprove the reaffirmation agreement under 11 U.S.C. § 524(m).

☐ The court disapproves the reaffirmation agreement under 11 U.S.C. § 524(m).

☐ The court does not approve the reaffirmation agreement.

### BY THE COURT

Date: _____      _____
                                 *United States Bankruptcy Judge*

382/152 29331

# CNH Capital

## RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT
### ( Fixed Rate)

Dealer No. 61455

Credit Application No. 95281

| "Buyer(s)": Legal Name(s), Street Address, City, State, Zip Code | "Seller": (Dealer's Legal Name and Address) |
|---|---|

GERALD W DYER II
10394 DYER ROAD
SANGER, TX 76266

☑ Individual/Sole Proprietorship
If So, State of Principal Residence: **TX**

☐ General Partnership
If So, State of Chief Executive Office:

☐ Corporation/LLC/LP
If So, State in Which Formed:

Organization ID No.:

"Seller": (Dealer's Legal Name and Address)
FEI Equipment, Ltd
2019 Airport Freeway
Euless, TX 76040
Tarrant County

County/Parish DENTON

Social Security No. or Taxpayer ID No. XXX-XX-1953

The undersigned Buyer (if more than one, collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and upon the terms set forth herein:

| NEW OR USED | "EQUIPMENT" (Make and Type) | MODEL | SERIAL NUMBER | HOURS | "CASH SALE PRICE" |
|---|---|---|---|---|---|
| N | Case IH Tractor | JX95 | HFJ035744 | 1.0 | $32,100.00 |
| N | Rhino Loader | 4211 | AGA28433 | 0.0 | $5,800.00 |
| | | | | | |
| | | | | | |

The above Equipment is purchased for ☐ commercial/business use ☑ agricultural use. "New Equipment is unused equipment, a rental unit or a demonstrator for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of purchase.

| | | | | TOTAL | $38,900.00 |

| "TRADE-IN EQUIPMENT" | | | | | GROSS ALLOWANCE (in Dollars) | SECURED DEBT DUE (in Dollars) | NET TRADE-IN ALLOWANCE (in Dollars) |
|---|---|---|---|---|---|---|---|
| MAKE | TYPE | MODEL | SERIAL NUMBER | HOURS | | | |
| | | | | | N/A | N/A | N/A |
| | | | | | | | |
| | | | | | | | |

**NO WARRANTY.** The Equipment is sold AS IS except for any applicable manufacturer's express, written warranty. If any manufacturer's express warranty applies to the Equipment, such warranty is restricted to the manufacturer's written, limited warranty provided separately to Buyer. Seller and manufacturer make no other representation or warranty, express or implied, and specifically exclude the implied warranties of merchantability and fitness for particular purpose.* Neither Seller nor manufacturer will be liable for incidental or consequential damages resulting from a breach of the express warranty or any implied warranty imposed by law.*

*Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.

**PREPAYMENTS.** Buyer may make a partial prepayment of the unpaid time balance hereunder (the "Time Balance") at any time, but any partial prepayment will not change or defer Buyer's next scheduled payments. If Buyer prepays the full unpaid Time Balance on construction equipment for commercial/business use, Buyer shall pay a prepayment fee of up to $150, unless such fee is prohibited by applicable law.

**LATE CHARGES/DEFAULT RATE/RETURNED CHECKS.** Buyer shall pay a late charge on each payment more than 10 days past due at the highest amount permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (by acceleration or otherwise) at the highest rate permitted by applicable law. If a check is returned for any reason, Seller or Assignee may charge Buyer a returned check processing fee as established by Seller or Assignee from time to time not to exceed the maximum permitted under applicable law.

**EXTENSIONS AND REFINANCING.** If Seller or Assignee extends, defers or refinances any payments due under this Agreement, Seller or Assignee may, at its option, increase the Time Price Differential Rate.

**SECURITY INTEREST AND COLLATERAL.** Buyer hereby grants to Seller a security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (such as insurance proceeds) and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this agreement (the "Agreement") or any other agreement between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the obligations.

Upon request, Buyer shall take any action reasonably deemed necessary by Seller to protect and enforce Seller's interest in the Collateral or rights under this Agreement. Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Seller to insert in this Agreement, or amend any financing statement or title registration documentation to reflect, the serial and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

**NOTICE TO THE BUYER:**

1. DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE ADDITIONAL PAGES, EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.

ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT. THE FIRST PAGE MUST BE SIGNED, AND ALL OTHER PAGES INITIALED BY THE BUYER(S).

I agree to the foregoing. I have received and examined the Equipment, which is in good operating order and condition and is as described. I acknowledge receipt of a copy of this Agreement. I agree to purchase the Equipment described above on the terms of this Agreement.

X _____
Buyer/Buyer's Representative          Title (if applicable)

05-16-2007    GERALD W DYER II
Date          Print Name

X _____
Buyer/Buyer's Representative          Title (if applicable)

X _____
Date          Print Name

X _____
Seller's Representative

05-16-2007    FEI Equipment, Ltd
Date          Print Name

61004A Rev. 9/06 Previous editions may not be used.    CNH CAPITAL COPY    Page 1 of 5

# CNH Capital



**STATEMENT OF TRANSACTION**

| | | |
|---|---|---|
| 1. Cash Sale Price | 1. $ | 38,900.00 |
| 2 Cash Down Payment $ | N/A | |
| Net Trade-in Allowance $ | N/A | |
| Manufacturer's Rebate $ | N/A | |
| Total Down Payment | 2. $ | N/A |
| 3. Unpaid Balance of Cash Sale Price (1 minus 2) | 3. $ | 38,900.00 |
| 4. Other Charges | | |
| (a) Taxes (Not in Cash Price) | $ | 66.87 |
| (b) Official Fees | $ | 5.00 |
| (c) UCC Filing Service Fee | $ | 12.50 |
| (d) Administrative Fee | $ | 482.50 |
| (e) Physical Damage Insurance | $ | N/A |
| (f) Credit Life Insurance | $ | N/A |
| (g) Credit Accident & Health Insurance | $ | N/A |
| (h) Liability Insurance | $ | N/A |
| (i) Manufacturer's Extended Warranty Plan | $ | N/A |
| (j) Extended Service Protection Plan | $ | N/A |
| (k) (Other) | $ | N/A |
| Total Other Charges | 4. $ | 566.87 |
| 5. Unpaid Balance (Amount Financed) (3+4) | 5. $ | 39,466.87 |
| 6. Time Price Differential (Finance Charge) | 6. $ | 4,190.87 |
| 7. Time Balance to be Paid (Total of Payments) (5+6) | 7. $ | 43,677.26 |
| 8. Time Sale Price (Total Sale Price) (1+4+6) | 8. $ | 43,677.54 |

9. The Unpaid Balance hereof shall bear Finance Charges computed at a per annum rate (the "Time Price Differential Rate" or "APR") equal to __2.9__ % (this is a FIXED RATE contract).

10. Date APR begins accruing: __05-16-2007__
   Mo.   Day   Yr.

Buyer agrees to pay to the order of Seller the Time Balance (line item 7) in accordance with the following schedule:

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 63 | 1 MONTH | $  519.97 | 06/16/2007 |
| 1 | 1 MONTH | $  519.77 | 06/16/2014 |

The total "Secured Debt Due" is $

The secured debt on the Trade-in Equipment is owed to:

Acct. No. _____

Lender Name _____

Phone No. _____

Lender Address _____

Lender City _____  State _____  Zip _____

Payoff Good Through: _____

If checked, Seller represents that the above debt has been paid.

Buyer hereby conveys to Seller all right, title and interest in the Trade-In Equipment free and clear of all encumbrances except as noted above.

**GUARANTY:**
The undersigned guarantees the prompt performance of Buyer's Obligations under the Agreement, and all modifications and extensions thereof, including prompt payment of all sums when due. The undersigned shall, immediately upon demand, pay any sum due under the Agreement and all modifications and extensions thereof, without setoff. The undersigned hereby waives notice of any modifications, amendments, or extensions of the Agreement, and of Buyer's nonperformance or breach of the Agreement. The payment obligations under this Guaranty are the direct, primary, and continuing obligations of the undersigned and the undersigned's heirs, successors and assigns, and not merely a guaranty of collection. Capitalized terms used in this Guaranty have the same meaning given to them in the Agreement.

Guarantor Signature: _____   Address: _____

Print Name: _____   City, State, Zip: _____

X _____
Buyer's Initials


## ADDITIONAL PROVISIONS

1. **Assignment.** Seller will assign this Agreement to CNH Capital America LLC (hereinafter "Assignee"). Buyer acknowledges that Seller has the right to assign this Agreement, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Upon receipt of notice from Assignee with instructions for payment, Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer and Seller and their respective heirs, personal representatives, successors or assigns; provided, however, that Buyer may not assign its obligations under this Agreement to any person without Assignee's prior written consent.

2. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (a) its state of principal residence, or (b) the state in which its chief executive office is located, or (c) the state in which its corporation, limited liability company or limited partnership is organized, or (d) its form of organization (such as from an individual to a corporation), Buyer will notify Assignee in writing promptly, but in no event more than thirty days after any such change

3. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller or the manufacturer of the Equipment. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, notwithstanding any breach or alleged breach of any representation, warranty or condition with respect to the Equipment or any dispute which now or hereafter arises between Buyer and Seller or any other person. Buyer shall indemnify and hold harmless Seller, Assignee and their officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damage, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Assignee of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Agreement or the Equipment of which Buyer has notice.

4. **Buyer's Covenants.** Buyer shall (i) keep the Equipment in the county of Buyer's address set forth on page 1 of this Agreement and not remove the Equipment from such address, except temporarily in connection with its ordinary use, unless Assignee consents in writing; (ii) maintain the Equipment in good condition and repair and not permit its value to be impaired; (iii) keep the Collateral free of all liens, encumbrances and security interests of persons other than Assignee; (iv) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (v) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral; (vi) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income; (vii) use Equipment solely in the conduct of Buyer's business; (viii) ensure Equipment will be used solely within the intended uses of the manufacturer during the term of this Agreement; (ix) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; (x) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (xi) strictly follow the terms of Provision 1 of the Agreement.

Each individual executing this Agreement represents and warrants that he or she has the requisite power and authority to enter into this Agreement and execute all related documents, to perform its obligations and consummate the transactions contemplated under this Agreement and related documents and that the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by the Buyer.

5. **Insurance.** Buyer shall keep the Equipment and Seller's and its assigns interest in it insured against fire, theft, physical damage and other hazards under policies listing Assignee as loss payee or as an additional insured, with such provisions, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers as shall be satisfactory to Assignee from time and time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of all such insurance and any premium refund and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment, returning any excess to Buyer. Buyer must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default

If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or Seller's designee; (a) to arrange physical damage insurance for the benefit of Seller and Buyer that covers physical damage to the Equipment, (b) to replace or otherwise modify such insurance as Seller deems appropriate and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute and endorse and negotiate all documents, checks or drafts received in payment of loss or damage under the insurance. This Agreement includes and hereby incorporates by reference any Insurance and Extended Service Plan Addendum signed in connection with this Agreement.

STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PRE-PAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT MAY RESULT IN LOSS OF INSURANCE COVERAGE.

If Buyer purchased liability insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is authorized to do so) or Seller's designee to arrange for the liability insurance to be issued.

6. **Modifications and Waivers.** This Agreement sets forth the entire understanding between Seller and Buyer. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Seller shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Seller to insert in this Agreement the serial number and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

7. **Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Agreement (including, specifically but without limitation, the purchase of insurance), Assignee may, at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Seller or Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Seller or Assignee at the highest rate permitted by law.

8. **Default.** Buyer shall be in default under this Agreement if any of the following occurs:

(a) Buyer fails to pay when due any of the Obligations, or to perform any other obligation of Buyer in this Agreement or in any renewal or refinancing of this Agreement;

(b) a Buyer dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to assign this Agreement or attempts to remove, sell, transfer, further encumber, part with possession of or sublet any Equipment;

(c) any warranty or representation made by Buyer to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made or Buyer fails to perform any covenant under this Agreement;

(d) Buyer fails to maintain applicable required insurance or fails to comply with the requirements of any such insurance;

(e) any other event occurs that causes Seller or Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; or

(f) the Equipment is impounded or confiscated by any federal, state or local governmental authority.

x _GD_
**Buyer's initials**



9. **Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, and all such expenses shall form part of the Obligations.

10. **Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement are governed by the laws of the state in which the Seller is located. All terms not otherwise defined have the meanings assigned to them by the Uniform Commercial Code.

11. **Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Seller or Seller's designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto on behalf and in the name of Buyer to evidence Seller's security interest in the Collateral.

12. **Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" as published in The Wall Street Journal on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If The Wall Street Journal ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. The payments, including Time Price Differential (Finance Charge) indicated herein, have been calculated using the Time Price Differential Rate (APR) in effect at the commencement of this Agreement and indicated herein. The final payment shall be recalculated to reflect increases/decreases in the Prime Rate during the remaining term. The Time Price Differential Rate (APR) shall never be less than 0%.

For all contracts, the Time Price Differential Rate (APR) shall be calculated for the actual number of days elapsed, using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

13. **Remedies upon Default.** Upon the occurrence of any event of default, Seller shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller may, at its option: (i) declare all Obligations immediately due and payable (excluding the unearned Time Price Differential) without notice or demand, nor any waiver of intent to accelerate or notice of acceleration; (ii) take possession of the Collateral, without notice or hearing, and, where permitted by law, Buyer expressly waives any right to notice or a prior hearing; (iii) render the Equipment unusable; (iv) require Buyer to assemble the Collateral and make it available to Seller at any convenient place designated by Seller; or (v) sell (including at wholesale) or otherwise dispose of the Collateral at public or private sale for cash or on credit terms, without notice unless required by law. If notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice. All rights and remedies may be exercised by Seller either separately or in combination and any action taken by Seller to recover payment from Buyer of the Obligations shall not limit Seller's rights with respect to the Collateral. Seller may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Seller may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. To the extent permitted by law Buyer waives notice of dishonor, presentment and demand as to this Agreement.

---

**Automatic Payment Plan Enrollment Form**

The undersigned authorizes CNH Capital America LLC or any assignee ("CNH Capital") to initiate withdrawals from the account designated below and maintained with the bank identified below by any means agreed upon by CNH Capital and the bank, or to withdraw by electronic fund transfer from said account, sums due CNH Capital pursuant to retail contracts or leases. The undersigned further authorizes the bank to take all actions necessary to effect such withdrawals and transfers. The undersigned may cancel these authorizations by providing CNH Capital written notice, but any such cancellation will become effective five days after CNH Capital receives the notice. CNH Capital may cancel this authorization at any time by written notice.

Customer Name (as it appears on the payment notices) _____

Address _____ City _____ State _____ Zip _____

Customer's Bank Name _____

Bank Address _____ City _____ State _____ Zip _____

Customer Account Number _____

☐ I prefer to use my checking account. I have enclosed a voided check.

Routing # _____ Account # _____

☐ I prefer to use my savings account. I have confirmed with my bank the routing number and my withdrawal slip is enclosed.

Routing # _____ Account # _____

Be sure to date and sign this form.

Date _____ Signature _____

Date _____ Signature _____

X _____
Buyer's Initials

61004A Rev. 5/08 Previous editions may not be used


## ASSIGNMENT

Dealer (hereinafter "Assignor") hereby assigns all its rights, title and interest in and to the Agreement and the Equipment to CNH Capital America LLC (hereinafter "Assignee"), under terms also described in the Retail Finance Agreement or other documents (collectively hereinafter "Agreement") executed by the Assignor and Assignee.

Assignor warrants and represents as follows: (a) all statements contained in the Agreement, including, but not limited to, the trade-in and down payment information, are true and correct and Assignor did not provide either the trade-in or the down-payment; (b) the Agreement is a valid and binding obligation arising out of a bona-fide obligation in the ordinary course of business and is fully enforceable according to its terms; (c) the collateral is as represented to the Buyer; (d) Assignor made all disclosures required by law, and in the manner required by law prior to Buyer's execution thereof; (e) Buyer is not a minor and has the capacity to contract; (f) Assignor has obtained, or caused to be obtained, a properly perfected first priority security interest (or, in Quebec, a first ranking movable hypothec) in the collateral or has delivered the title, or caused the title to be delivered, to Assignee or noted, or caused to be noted, Assignee's lien on the title to the collateral, whichever applies; (g) as of the date of the Agreement, Assignor has verified that the Buyer has obtained the insurance required by the applicable Agreement and has valid proof of such verification; (h) Assignor has a properly completed and signed credit application from the Buyer; (i) the collateral was not delivered to the Buyer until full credit approval has been obtained from the Assignee and the Assignee has been properly and fully completed by Buyer and Assignor; (j) title to the collateral is vested in the Assignor, free of all liens and encumbrances, and Assignor has the right to assign said title, and any property received in trade for the collateral is free of all liens and encumbrances; (k) the collateral has been paid in full or will be paid in full with Agreement proceeds; (l) Assignor is (and at all times will be) solvent and operating in the ordinary course of business; (m) the Agreement is not subject to any defense, counterclaim or setoff (or compensation in Quebec), except to the extent enforceability may be limited by bankruptcy, receivership, insolvency or moratorium laws, or by other similar laws of general application, and (n) all Agreements (other than Assignee's forms) comply with all applicable state, provincial and federal laws.

Assignor hereby unconditionally agrees to purchase the Agreement from Assignee upon demand for the full amount then unpaid whether the Agreement shall then be, or not be, in default if Buyer or any other person makes a claim against Assignee alleging facts that could constitute a breach of any of the foregoing warranties. Assignor shall assume the defense of such claims and shall indemnify and hold Assignee harmless from all loss, cost and expense arising therefrom. In addition, the Assignment includes the provisions, as outlined in the Dealer Handbook or Retail Finance Agreement, if the box checked below by Assignor which sets forth the Assignor's obligation to Assignee.

The liability of the Assignor, shall not be affected by any extension, renewal, or other change in the time of the payment of the Agreement, nor any change in the manner, place or terms of the payment thereof, nor the release of, nor settlement or compromise with any party liable for the payment thereof or the release or non-perfection of any security thereunder. Assignee shall not be bound to exhaust its recourse against Buyer or any other person nor any security Assignee may at any time have, before being entitled to payment from Assignor hereunder. Assignor waives notice of the acceptance of this Assignment and notices of non-payment and non-performance of the Agreement and any other notices required by the law and waives all setoffs and counterclaims. This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignee's payment of the purchase price therefor, whichever first occurs.

ENDORSEMENT CODES    ☑ N    ☐ R    ☐ F    ☐ O

OTHER ENDORSEMENT EXPLANATION

| | | | |
|---|---|---|---|
| PROCEEDS DIST. | WHLS (excludes payoffs) | $ | 29558 00 |
| | CHK/ACH | $ | 9861.11 |

X _____

Seller's Representative

05-16-2007      FEI Equipment, Ltd

Date        Print Name

ENDORSEMENT CODES: N - Non-Recourse; R - Repurchase; F - Full Recourse; O - Other

## RETAIL CONTRACT CHECKLIST

_____ Original signed customer credit application(s)

_____ If Customer providing own PDI insurance, proof of customer PDI insurance coverage

_____ Buyer(s) have signed and initialed completed contract

_____ Buyer(s) name is exact legal name and physical address

_____ Dealer has checked and signed applicable endorsement code in assignment section

_____ Guaranty form for corporations completed, signed and included (if applicable)

_____ Cross collateralization form completed, signed and included (if applicable)

_____ Invoice included for allied equipment

_____ Automatic payment plan enrollment form completed, signed and attached with voided customer check or withdrawal slip (if applicable)

## THANK YOU FOR YOUR BUSINESS

Dyer

Compound Period  .........: Monthly

Nominal Annual Rate .... :    2.900    %
Effective Annual Rate ... :    2.939    %
Periodic Rate ................. :    0.2417   %
Daily Rate ........................:    0.00795 %

CASH FLOW DATA

| | Event | Start Date | Amount | Number | Period | End Date |
|---|---|---|---|---|---|---|
| 1 | Loan | 01/20/2009 | 30,807.94 | 1 | | |
| 2 | Payment | 02/16/2009 | 520.00 | 64 | Monthly | 05/16/2014 |

AMORTIZATION SCHEDULE - Normal Amortization

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| Loan | 01/20/2009 | | | | 30,807.94 |
| 1 | 02/16/2009 | 520.00 | 66.09 | 453.91 | 30,354.03 |
| 2 | 03/16/2009 | 520.00 | 73.36 | 446.64 | 29,907.39 |
| 3 | 04/16/2009 | 520.00 | 72.28 | 447.72 | 29,459.67 |
| 4 | 05/16/2009 | 520.00 | 71.19 | 448.81 | 29,010.86 |
| 5 | 06/16/2009 | 520.00 | 70.11 | 449.89 | 28,560.97 |
| 6 | 07/16/2009 | 520.00 | 69.02 | 450.98 | 28,109.99 |
| 7 | 08/16/2009 | 520.00 | 67.93 | 452.07 | 27,657.92 |
| 8 | 09/16/2009 | 520.00 | 66.84 | 453.16 | 27,204.76 |
| 9 | 10/16/2009 | 520.00 | 65.74 | 454.26 | 26,750.50 |
| 10 | 11/16/2009 | 520.00 | 64.65 | 455.35 | 26,295.15 |
| 11 | 12/16/2009 | 520.00 | 63.55 | 456.45 | 25,838.70 |
| 2009 | Totals | 5,720.00 | 750.76 | 4,969.24 | |
| 12 | 01/16/2010 | 520.00 | 62.44 | 457.56 | 25,381.14 |
| 13 | 02/16/2010 | 520.00 | 61.34 | 458.66 | 24,922.48 |
| 14 | 03/16/2010 | 520.00 | 60.23 | 459.77 | 24,462.71 |
| 15 | 04/16/2010 | 520.00 | 59.12 | 460.88 | 24,001.83 |
| 16 | 05/16/2010 | 520.00 | 58.00 | 462.00 | 23,539.83 |
| 17 | 06/16/2010 | 520.00 | 56.89 | 463.11 | 23,076.72 |
| 18 | 07/16/2010 | 520.00 | 55.77 | 464.23 | 22,612.49 |
| 19 | 08/16/2010 | 520.00 | 54.65 | 465.35 | 22,147.14 |
| 20 | 09/16/2010 | 520.00 | 53.52 | 466.48 | 21,680.66 |
| 21 | 10/16/2010 | 520.00 | 52.39 | 467.61 | 21,213.05 |
| 22 | 11/16/2010 | 520.00 | 51.26 | 468.74 | 20,744.31 |
| 23 | 12/16/2010 | 520.00 | 50.13 | 469.87 | 20,274.44 |
| 2010 | Totals | 6,240.00 | 675.74 | 5,564.26 | |
| 24 | 01/16/2011 | 520.00 | 49.00 | 471.00 | 19,803.44 |
| 25 | 02/16/2011 | 520.00 | 47.86 | 472.14 | 19,331.30 |
| 26 | 03/16/2011 | 520.00 | 46.72 | 473.28 | 18,858.02 |
| 27 | 04/16/2011 | 520.00 | 45.57 | 474.43 | 18,383.59 |

Dyer

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| 28 | 05/16/2011 | 520.00 | 44.43 | 475.57 | 17,908.02 |
| 29 | 06/16/2011 | 520.00 | 43.28 | 476.72 | 17,431.30 |
| 30 | 07/16/2011 | 520.00 | 42.13 | 477.87 | 16,953.43 |
| 31 | 08/16/2011 | 520.00 | 40.97 | 479.03 | 16,474.40 |
| 32 | 09/16/2011 | 520.00 | 39.81 | 480.19 | 15,994.21 |
| 33 | 10/16/2011 | 520.00 | 38.65 | 481.35 | 15,512.86 |
| 34 | 11/16/2011 | 520.00 | 37.49 | 482.51 | 15,030.35 |
| 35 | 12/16/2011 | 520.00 | 36.32 | 483.68 | 14,546.67 |
| 2011 | Totals | 6,240.00 | 512.23 | 5,727.77 | |
| | | | | | |
| 36 | 01/16/2012 | 520.00 | 35.15 | 484.85 | 14,061.82 |
| 37 | 02/16/2012 | 520.00 | 33.98 | 486.02 | 13,575.80 |
| 38 | 03/16/2012 | 520.00 | 32.81 | 487.19 | 13,088.61 |
| 39 | 04/16/2012 | 520.00 | 31.63 | 488.37 | 12,600.24 |
| 40 | 05/16/2012 | 520.00 | 30.45 | 489.55 | 12,110.69 |
| 41 | 06/16/2012 | 520.00 | 29.27 | 490.73 | 11,619.96 |
| 42 | 07/16/2012 | 520.00 | 28.08 | 491.92 | 11,128.04 |
| 43 | 08/16/2012 | 520.00 | 26.89 | 493.11 | 10,634.93 |
| 44 | 09/16/2012 | 520.00 | 25.70 | 494.30 | 10,140.63 |
| 45 | 10/16/2012 | 520.00 | 24.51 | 495.49 | 9,645.14 |
| 46 | 11/16/2012 | 520.00 | 23.31 | 496.69 | 9,148.45 |
| 47 | 12/16/2012 | 520.00 | 22.11 | 497.89 | 8,650.56 |
| 2012 | Totals | 6,240.00 | 343.89 | 5,896.11 | |
| | | | | | |
| 48 | 01/16/2013 | 520.00 | 20.91 | 499.09 | 8,151.47 |
| 49 | 02/16/2013 | 520.00 | 19.70 | 500.30 | 7,651.17 |
| 50 | 03/16/2013 | 520.00 | 18.49 | 501.51 | 7,149.66 |
| 51 | 04/16/2013 | 520.00 | 17.28 | 502.72 | 6,646.94 |
| 52 | 05/16/2013 | 520.00 | 16.06 | 503.94 | 6,143.00 |
| 53 | 06/16/2013 | 520.00 | 14.85 | 505.15 | 5,637.85 |
| 54 | 07/16/2013 | 520.00 | 13.62 | 506.38 | 5,131.47 |
| 55 | 08/16/2013 | 520.00 | 12.40 | 507.60 | 4,623.87 |
| 56 | 09/16/2013 | 520.00 | 11.17 | 508.83 | 4,115.04 |
| 57 | 10/16/2013 | 520.00 | 9.94 | 510.06 | 3,604.98 |
| 58 | 11/16/2013 | 520.00 | 8.71 | 511.29 | 3,093.69 |
| 59 | 12/16/2013 | 520.00 | 7.48 | 512.52 | 2,581.17 |
| 2013 | Totals | 6,240.00 | 170.61 | 6,069.39 | |
| | | | | | |
| 60 | 01/16/2014 | 520.00 | 6.24 | 513.76 | 2,067.41 |
| 61 | 02/16/2014 | 520.00 | 5.00 | 515.00 | 1,552.41 |
| 62 | 03/16/2014 | 520.00 | 3.75 | 516.25 | 1,036.16 |
| 63 | 04/16/2014 | 520.00 | 2.50 | 517.50 | 518.66 |
| 64 | 05/16/2014 | 520.00 | 1.34 | 518.66 | 0.00 |
| 2014 | Totals | 2,600.00 | 18.83 | 2,581.17 | |
| | | | | | |
| Grand Totals | | 33,280.00 | 2,472.06 | 30,807.94 | |

Dyer

Last interest amount increased by 0.09 due to rounding.